

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| DALRADA PRECISION CORP., | Case No.:  24-cv-1122-AJB-DEB |
| | **ORDER** |
| Plaintiff, | |
| | **(Doc. Nos. 98, 103, 108, 119, 125)** |
| v. | |
| STUART COX, | |
| Defendant. | |

Presently pending before the Court are five motions filed by Defendant Stuart Cox ("Defendant"), appearing *pro se*. (Doc. Nos. 98; 103; 108; 119; 125.) Defendant has filed a motion to vacate the settlement reached at the Early Neutral Evaluation (Doc. No. 98), a supplemental motion to vacate the settlement (Doc. No. 103), a consolidated motion to vacate the settlement (Doc. No. 108), a motion for sanctions (Doc. No. 119), and a motion to reinstate a previously vacated hearing date (Doc. No. 125). The arguments throughout these motions are substantially similar—Defendant moves to vacate the settlement pursuant to Federal Rule of Civil Procedure 60(b) (*see* Doc. Nos. 98; 103; 108) and Defendant seeks dismissal of the Complaint for lack of personal jurisdiction (*see* Doc. Nos. 103; 108). In Defendant's fourth motion, he seeks sanctions against Plaintiffs Dalrada Precision Corporation and Dalrada Financial Corporation (collectively, "Plaintiffs"), and their counsel Fletcher Robbe and Andrew Jones (collectively, "Counsel"). (Doc. No. 119.)

The crux of Defendant's fifth motion is that he is prejudiced because he was denied access to the Court when motions were submitted without oral argument. (Doc. No. 125.) This motion also rehashes a number of Defendant's previous arguments including a request for sanctions and arguments related to opposing counsel's pro hac vice status. (*See id.*) Plaintiffs opposed each of the five motions. (Doc. Nos. 101; 104; 111; 120; 126.) Defendant filed replies related to the motion to vacate the settlement (Doc. No. 102) and the consolidated motion to vacate the settlement (Doc. No. 112).  Pursuant to Civil Local Rule 7.1.d.1, the Court finds the matters suitable for determination on the papers and without oral argument.

## I.    BACKGROUND

Defendant is a citizen of the United Kingdom and currently resides in the Philippines. (Doc. No. 1 ¶ 5.) Plaintiff Dalrada Precision Corp. is a California Corporation with its principal place of business in Escondido, California. (*Id.* ¶ 3.) Plaintiff Dalrada Financial Corporation is a Wyoming Corporation with its principal place of business also in Escondido, California. (*Id.*) Plaintiffs allege that "[a]ll transactions subject to this Complaint have taken place in the United States, State of California," and "[u]pon information and belief, Defendant Cox has had regular, continuous, and ongoing contact with this jurisdiction." (*Id.* ¶¶ 6, 7.)

In June 2019, Defendant was the sole owner/shareholder of Likido Limited ("Likido"), a United Kingdom company with a physical plant location in Edinburgh, Scotland. (*Id.* ¶ 8.) Likido produces and manufactures a commercial heat pump device designed to conserve energy and lower utility costs. (*Id.* ¶ 9.)

Plaintiffs and Defendant entered into a Stock Purchase Agreement in December 2019, whereby Defendant effectively transferred ownership of Likido to Plaintiffs. (*Id.* ¶ 10; *see also* Doc. No. 1-2, Ex. A.) Defendant represented to Plaintiffs that Plaintiffs would acquire all of Likido's assets, including all pending Purchase Agreements from customers that would not be completed until after the sale of the company. (Doc. No. 1 ¶ 16.) Pursuant to the Stock Purchase Agreement, liabilities also transferred from

2

Defendant to Plaintiffs. (*Id.* ¶ 24.) Additionally, Plaintiffs and Defendant entered into a Consultant Agreement whereby Defendant would provide Plaintiffs with consulting services for thirty-six months. (*Id.* ¶¶ 12, 26.)

According to Plaintiffs, as part of his "sales pitch," Defendant relied upon Likido's contract with a company known as MAPtech. (*Id.* ¶ 17.) MAPtech and Likido negotiated and agreed that MAPtech would purchase industrial chilling systems from Likido. (*Id.*) Plaintiffs allege that Defendant misrepresented the MAPtech contract, indicating that the contract would be profitable for Plaintiffs. (*Id.* ¶ 20.) But because Defendant was the sole owner of Likido at the time the MAPtech contract was entered into, all monies paid by MAPtech were paid into Defendant's personal bank account. (*Id.* ¶ 18.) Allegedly, MAPtech never received the chilling systems and Plaintiffs contend that Defendant had no ability to perform his part of the agreement. (*Id.* ¶ 19.) Plaintiffs allege that Defendant never informed Plaintiffs that he received the payment from MAPtech, nor that he was unable to manufacture the units for MAPtech. (*Id.* ¶ 21.)

After Likido failed to produce and deliver the chilling units, MAPtech filed a Notice of Arbitration in the United Kingdom alleging conversion, fraudulent misrepresentation, breach of contract, and unjust enrichment. (*Id.* ¶ 25.) On January 10, 2023, the Arbitrator issued its award in favor of MAPtech in the amount of $429,987.98, including interest. (*Id.* ¶ 25.) Because Plaintiffs assumed Likido's liabilities, this award became Plaintiffs' debt. (*Id.* ¶¶ 24, 25.)

Plaintiffs allege that beginning in May 2022, Defendant's behavior became "unpredictable and bizarre." (*Id.* ¶ 27.) According to the Complaint, Defendant sent "threatening and, at times, vulgar" emails to a potential customer. (*Id.* ¶ 28) Plaintiffs then determined that Defendant's employment with Plaintiffs needed to end. (*Id.* ¶ 30.) Plaintiffs offered Defendant a six-month paid leave with any future relationship to be discusses after the leave. (*Id.*) Defendant's leave and associated payments to him ceased on February 23, 2023. (*Id.* ¶ 31.)

Plaintiffs now bring the instant action alleging eight causes of action: (1) fraudulent misrepresentation, (2) fraudulent concealment, (3) fraudulent inducement, (4) breach of contract, (5) unjust enrichment, (6) injunctive relief, (7) defamation, and (8) violations of Business and Professions Code §§ 17200–17207.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(2)

An action is subject to dismissal if the Court lacks personal jurisdiction over defendant. *See* Fed. R. Civ. P. 12(b)(2). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the personal jurisdiction law of the state where the federal court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *See id.* at 800–01. Personal jurisdiction over a defendant that does not reside in the forum state may be exercised consistent with due process if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946) (citation and internal quotation marks omitted).

## III.    DISCUSSION

### A.    Personal Jurisdiction

For the Court to properly exercise specific personal jurisdiction in accordance with due process, the defendant must have "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To establish minimum contacts, the court relies on the *Dole* factors: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the

4

defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The minimum contacts inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," emphasizing that "it is the defendant's conduct that must form the necessary connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). If the plaintiff successfully bears the burden of meeting the first two prongs, then the defendant shoulders the burden of the final prong. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2003).

"[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, to determine whether the defendant "purposefully established minimum contacts within the forum," the court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

In their opposition, Plaintiffs contend that "this Court has specific personal jurisdiction over this Defendant based upon his deliberate contacts with California, which gave rise to Plaintiff's claims." (Doc. No. 111 at 1.) Plaintiffs state that Defendant made numerous trips to California to conduct business as part of his employment contract and the consulting agreement. (*Id.* at 4.) And Defendant's payroll came directly and solely from Plaintiffs' California banks. (*Id.*) However, none of these allegations are in Plaintiffs' Complaint. (*See generally* Doc. No. 1.) And even if they were, these conclusory allegations are insufficient to establish personal jurisdiction over Defendant.

Two Ninth Circuit cases are relevant here. In *Picot*, the Ninth Circuit affirmed a California district court's motion to dismiss for lack of personal jurisdiction. *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015). Even though a Wisconsin defendant entered into a

contract with a California plaintiff, that was not enough to establish specific personal jurisdiction over the defendant in California for the contract and tort claims. *See id.* at 1213. Likewise, in *Davis*, the Ninth Circuit affirmed an Idaho district court's motion to dismiss for lack of personal jurisdiction. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023), cert. denied, 144 S. Ct. 826 (2024). There, although an English corporation entered into a contract with an Idaho corporation, personal jurisdiction in Idaho was not justified. Upon review, the Ninth Circuit reasoned:

> While Tamarack is an Idaho resident, there's no evidence that Cranfield sought out Tamarack in Idaho or benefitted from Tamarack's residence in Idaho. Neither the contract's negotiations, terms, nor contemplated consequences establish that Cranfield formed a substantial connection with Idaho. And while the course of dealings show that Cranfield employees entered Idaho several times, those transitory trips into the forum state do not sufficiently reflect purposeful availment.

*Davis*, 71 F.4th at 1163.

Similar to the facts of *Davis*, there is no evidence that Defendant sought out Plaintiffs in California or benefitted Plaintiffs' California residence. And unlike the facts in *Davis*, the Complaint here does not allege that Defendant ever entered California.[1] Plaintiffs do not allege that Defendant reached out to Plaintiffs in California to initiate any contract negotiations, nor do Plaintiffs allege that any contract negotiations occurred in California. Moreover, Plaintiffs fail to allege that Defendant harmed them in California. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 ("Harm suffered in the forum state is a necessary element in establishing purposeful direction.") As alleged, the harm to Plaintiffs occurred in the United Kingdom, where the arbitration award was entered against Likido. As to any reputational harm Plaintiffs may have suffered because of Defendant, it is unclear form the Complaint where these harms were suffered. Purportedly, Defendant told "Anthony Pagnotti, Brian McGoff, Kyle McCollum and Stephanie Moya" that Plaintiffs and

---

[1] Although Plaintiffs' opposition alleges Defendant visited California (Doc. No. 111 at 3), those allegations are not in the Complaint.

members of their staff were "hangerons" and "wankers." (Doc. No. 1 ¶ 83.) However, the Complaint is devoid of any facts relating to where any of these individuals are located, or what concrete harm was suffered because of these statements. Indeed, the Complaint does not allege any loss of business in California as a result Defendant's actions.

Plaintiffs attempt to rely on the forum selection clause in the Consultant Agreement. (*See* Doc. No. 1-2, Ex. F at 84.) However, the Complaint does not allege a breach of the Consultant Agreement. The Complaint only alleges a breach of the Stock Purchase Agreement. (Doc. No. 1 ¶¶ 57–67.) Notably, the Stock Purchase Agreement—the only contract which Plaintiffs allege Defendant breached—provides that any dispute arising out of it "shall be settled by submission to the Scottish Arbitration Center for binding arbitration to be conducted in the city of Edinburgh." (Doc. No. 1-2, Ex. F at 19.) And that the "agreement shall be governed by the laws of the United Kingdom as applicable in Scottland."

Accordingly, the Complaint's threadbare and conclusory allegations are insufficient to satisfy Plaintiffs' burden—Plaintiffs do not establish that Defendant purposefully availed himself of this forum. Given that Plaintiffs cannot satisfy the first *Dole* factor, Plaintiffs cannot carry their burden to justify the Court's exercise of specific personal jurisdiction.[2] Thus, the Court **DISMISSES WITHOUT PREJUDICE** the claims against Defendant Cox for lack of personal jurisdiction.

///

///

---

[2] Given that the Court finds no purposeful availment, the Court declines to analyze the remaining *Dole* factors. Moreover, to the extent Plaintiff alleges a different analysis for its contract and tort claims, the Ninth Circuit cautions against drawing a fine distinction between the two tests, stating "there's no need to adhere to an iron-clad doctrinal dichotomy to analyze specific jurisdiction." *Davis*, 71 F.4th at 1162 ("[W]hen considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction."). Given the lack of contacts outside the contractual hook, the Court determines that the jurisdictional analysis for both the contract and tort claims points to the same result.

**B.    Settlement Agreement**

Turning to Defendant's request to vacate the settlement reached at the Early Neutral Evaluation ("ENE"). (Doc. Nos. 98; 103; 108.) On March 27, 2025, the parties participated in an ENE with the assigned Magistrate Judge.  (Doc. No. 81.) On April 9, 2025, the parties participated in a continued ENE. (Doc. No. 87.) At the April 9 ENE, "the parties settled all claims." (*Id.*) Defendant now seeks to vacate the settlement pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (Doc. Nos. 98; 103; 108.) Defendant contends that he entered into the settlement under duress and unfair circumstances. (Doc. No. 98 at 4.) Defendant argues that his *pro se status* and residence outside of the United States hindered his ability to meaningfully participate in the ENE. (*Id.* at 4–5.)

Federal Rule of Civil Procedure 60(b) allows the court to relieve a party or a party's legal representative from a final judgment, order, or proceeding. Under Federal Rule of Civil Procedure 60, "the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Here, no final judgment has been entered, nor has there been an order of dismissal. Therefore, Rule 60(b) is not applicable. *See Lovell v. Union City Police Dep't*, No. 17-1039-JDT-EGB, 2018 WL 1470262, at *1 n.2 (W.D. Tenn. Mar. 26, 2018) (finding Rule 60(b) not applicable to vacate a settlement agreement because there was no final judgment or order of dismissal entered). Nevertheless, "Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret . . . ." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1101 (9th Cir. 2006). Rather, parties are "bound by and accountable for the deliberate actions of themselves and their chosen counsel." *Id.*; *Engleson v. Burlington Northern R. Co*, 972 F.2d 1038, 1043 (9th Cir. 1992) ("Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for

8

relief under Rule 60(b)(1).") Furthermore, a misunderstanding of the legal consequences of agreeing to a settlement agreement is not a basis for setting aside an accepted settlement. *See id.* (rejecting argument that Rule 68 judgment should be vacated because plaintiff "did not possess sufficient understanding to have ever validly accepted the offer."); *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1099 (9th Cir. 2006) ("Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision that a party later comes to regret through second thoughts or subsequently-gained knowledge . . . ." Under Rule 60(b)(3), a district court may relieve a party from an order for fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3); *Hyler v. Inv. Grade Loans, Inc.*, No. C 07-03180 WHA, 2008 WL 4279689, at *3 (N.D. Cal. Sept. 12, 2008), *aff'd*, 362 F. App'x 652 (9th Cir. 2010). "To prevail, the moving party must prove by *clear and convincing evidence* that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (emphasis added) (quoting *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)).

Liberally construed, Plaintiff's motion simply argues that he was disadvantaged because he had to participate in the ENE while residing out of the country, and that as a *pro se* litigant he did not find out about the ENE deadlines until a couple of weeks before the ENE.[3] (Doc. No. 98 at 4–5.) These allegations are not sufficient to set aside the

---

[3] Defendant's allegation that Plaintiffs' counsel improperly attempted to "initiate off-record settlement discussions" is without merit. (Doc. No. 98 at 5.) While an attorney, of course, may not ethically communicate with a person the attorney knows to be represented by counsel about the subject matter of the representation without the consent of such person's counsel, nor may an attorney give legal advice to an unrepresented person (*see* Rule 4.2 of the California Rules of Professional Conduct), there is no prohibition against an attorney communicating with an unrepresented party.

settlement. That said, Plaintiffs have not moved to enforce the settlement agreement.[4] Thus, the Court will neither set aside nor enforce the settlement agreement at this time. Defendant's Motions to Vacate the Settlement are **DENIED**. (Doc. Nos. 98; 103; 108.)

### C.    Sanctions

Defendant moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure alleging that Plaintiffs and their counsel "have made false representations to this Court." (Doc. No. 119 at 1.) In opposition, Plaintiffs contend that Defendant's allegations "are completely false" (Doc. No. 120 at 3) and his request for sanctions is not supported by the facts of this case (*id.* at 5). The Court agrees.

The Ninth Circuit has identified two circumstances in which sanctions are appropriate, "where a litigant makes a 'frivolous filing,' that is, where he files a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law; and where a litigant files a pleading or other paper for an 'improper purpose,' such as personal or economic harassment." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 652 (9th Cir. 1990). The Court finds Plaintiffs' Complaint was neither frivolous, nor filed for an improper purpose. Accordingly, the Court denies Defendant's motions for sanctions. (Doc. Nos. 119; 125.)

### D.    Request to Reinstate Hearing

Defendant seeks to have the December 4, 2025 Hearing reinstated. (Doc. No. 125.) Plaintiffs opposed the request. (Doc. No. 126.) Defendant's request is **DENIED**. (Doc. No. 125.) The Court, in its discretion, may decide a motion without oral argument. CivLR 7.1.d.1.

## IV.    CONCLUSION

For the forgoing reasons, the Court **ORDERS** as follows:

---

[4] Plaintiffs filed a motion to enforce the settlement on May 15, 2025, but withdrew the motion the same day. (Doc. Nos. 96; 97.)

1.      The Court **GRANTS** Defendant's motions to dismiss under Rule 12(b)(2) **WITH LEAVE TO AMEND**. Should Plaintiffs choose to do so, they may file an Amended Complaint by **January 29, 2026**. Defendant must file a responsive pleading no later than **February 13, 2026**.

2.      The Court **DENIES** Defendant's motion to vacate the settlement.

3.      The Court **DENIES** Defendant's motion for sanctions.

4.      The Court **DENIES** Defendant's request to reinstate the December 4, 2025 hearing date.

**IT IS SO ORDERED.**

Dated:  January 16, 2026

Hon. Anthony J. Battaglia
United States District Judge

24-cv-1122-AJB-DEB